NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0694n.06

No. 16-4761

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| LM INSURANCE CORPORATION., et al., | ) | **FILED** |
| Plaintiffs-Appellees, | ) | Dec 19, 2017 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE |
| AMANDA CRISS, Administratrix for the estate of | ) | UNITED STATES DISTRICT |
| George Szuhay, | ) | COURT FOR THE |
|  | ) | NORTHERN DISTRICT OF |
| Defendant-Appellant. | ) | OHIO |

BEFORE:     BOGGS, BATCHELDER, and KETHLEDGE, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**   Defendant-Appellant Amanda Criss, serving as Adminstratrix for the estate of George Szuhay, appeals the district court's declaratory judgment holding that Appellee LM Insurance Corporation ("LM Insurance"), which underwrote a commercial general-liability insurance policy (the "Insurance Policy") for non-party Empire Die Casting Co., Inc. ("Empire"), has no obligation to satisfy a default judgment that Szuhay obtained against Empire.  We affirm.

## I.

Non-party Barnett & Brown Personnel Services, Inc., d/b/a Integrity Staffing Services ("Integrity Staffing"), is a staffing service that "leases" employees to companies.  Integrity Staffing and Empire entered into an agreement (the "Leasing Agreement") that allowed Empire to "lease" employees from Integrity Staffing when Empire needed to fill a position in its company.  The Leasing Agreement provided that when Empire wanted to lease an Integrity

Staffing employee, it would provide Integrity Staffing a description of the position it sought to fill, the experience required for the position, and any other relevant job specifications. Integrity Staffing would then identify candidates in its employ and send materials for those candidates to Empire. Empire had the option to accept or reject any candidates Integrity Staffing sent, and the Leasing Agreement did not require Empire to fill a position with an Integrity Staffing employee.

The Leasing Agreement governed the companies' respective responsibilities to each other and to leased employees should Empire elect to fill an open position with a leased employee from Integrity Staffing. Relevant to Szuhay's arguments before us, the Leasing Agreement required Empire to "maintain liability insurance coverage covering the acts of [l]eased [e]mployees to the same extent as it maintain[ed] [liability insurance] coverage with respect to the acts of [its] direct employees," and included a reciprocal indemnification clause instructing that Integrity Staffing and Empire would indemnify and hold harmless one another for any damages[1] arising from their own respective conduct.[2]

---

[1] The Leasing Agreement defined "[d]amages" as "includ[ing] any claims, actions, demands, losses, costs, expenses, liabilities (joint or several), penalties and damages, including, without limitation, reasonable counsel fees and costs."

[2] The indemnification clause provided in pertinent part:

**8. Indemnification**

(a) [Empire] agrees that it will indemnify and hold [Integrity Staffing] harmless from any and all "Damages" (as hereinafter defined) arising out of or related to (i) claims arising out of a breach of any obligation of [Empire] pursuant to this Agreement, . . . (iv) claims of Leased Employees arising out of conduct of [Empire], such as (but not limited to) wrongful or unjust termination, breach of contract (express or implied), promissory estoppel, negligent or intentional (tortious) conduct, [and] negligent or intentional infliction of emotional distress . . . . [Empire] releases [Integrity Staffing] from any claims or liability to it related to any of the foregoing and agrees not to institute any legal proceedings against [Integrity Staffing] with respect thereto.

(b) [Integrity Staffing] agrees that it will indemnify and hold [Empire] harmless from any and all Damages, as defined in Paragraph 8(a) above, arising out of or related to (i) claims arising out of a breach of any obligation of [Integrity Staffing] pursuant to this Agreement, (ii) claims of Leased Employees arising out of the conduct of [Integrity Staffing], such as the conduct described in paragraph 8(a)(iv) above, and (iii) claims from any third party arising out of or related to the conduct of a Leased Employee while the Leased Employee was acting under the direct supervision of [Integrity Staffing] . . . . [Integrity Staffing] releases [Empire] from any claims or liability related to any of the foregoing and agrees not to institute any legal proceedings against [Empire] with respect thereto.

In compliance with the Leasing Agreement's liability-coverage requirement, Empire maintained a commercial general-liability insurance policy with Plaintiffs-Appellees LM Insurance (the "Insurance Policy").[3] The terms of the Insurance Policy obligated LM Insurance to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." An "insured" included Empire, any person or organization Empire listed as an additional insured, and "any person or organization to whom [Empire] [is] obligated by a written agreement to procure additional insured coverage, but only with respect to liability for 'bodily injury' . . . caused, in whole or part, by [Empire's] acts or omissions or the acts or omissions of those acting on [Empire's] behalf[] . . . [i]n the performance of [Empire's] ongoing operations."

Of particular importance here, the Insurance Policy specifically excluded coverage for "'[b]odily injury' to[] . . . [a]n 'employee' of the insured arising out of and in the course of: (a) [e]mployment by the insured; or (b) [p]erforming duties related to the conduct of the insured's business." "Employee" included a "leased worker," defined as "a person leased to [Empire] by a labor leasing firm under an agreement between [Empire] and the labor leasing firm, to perform duties related to the conduct of [Empire's] business."

## II.

At some point Empire communicated to Integrity Staffing that it needed to staff the position of a machine operator of aluminum-casting machines. Integrity Staffing selected Szuhay as the candidate and, upon approval from Empire, assigned him to Empire's aluminum-casting facility. While Szuhay was operating one of Empire's aluminum-casting machines,

---

[3] As the district court discussed briefly, the Insurance Policy also required Empire to name Integrity Staffing as an additional insured under the Insurance Policy, which the record suggests Empire did not do. Whether Empire did or did not explicitly name Integrity Staffing as an "additional insured" makes no difference to the resolution of this case.

molten aluminum spilled onto him. Szuhay sustained severe burns and bodily injury. Szuhay concedes he was a leased employee/leased worker, as defined in the Leasing Agreement and Insurance Policy.

Following this workplace accident, Szuhay hired an attorney and in October 2011, brought suit against Empire in the Court of Common Pleas of Summit County, Ohio, claiming employer intentional-tort and premises liability. After engaging in some discovery, Szuhay voluntarily dismissed the case in December 2012. A year later, in December 2013, Szuhay refiled the action against Empire in the Court of Common Pleas, again claiming employer intentional-tort and premises liability.

During the year between Szuhay's voluntary dismissal of the case and his refiling it, Empire petitioned for Chapter 11 bankruptcy. *See In re E.D.C. Liquidating, Inc. (f/k/a Empire Die Casting Co., Inc.)*, No. 6:14-bk-61086 (Bankr. N.D. Ohio) (filed October 2013). Because of the pending bankruptcy proceedings, Empire filed in the Court of Common Pleas a notice of suggestion of automatic stay. The Court of Common Pleas granted the motion and the automatic stay commenced.

Szuhay filed a motion in the bankruptcy court asking that it lift the automatic stay and allow the case before the Court of Common Pleas to proceed. The bankruptcy court granted the motion and lifted the stay. However, the bankruptcy court limited Szuhay's ability to recover against Empire "to [Empire's] insurance policies covering losses, if any, incurred by [Szuhay] pursuant to the terms of said policies."

With the stay lifted, Szuhay resumed the litigation in the Court of Common Pleas and filed a motion for default judgment against Empire for failing to answer or to otherwise defend

the action. The Court of Common Pleas granted the motion and entered default judgment against Empire.

After holding a hearing on damages, the Court of Common Pleas awarded Szuhay $696,937.09 for lost wages, medical bills, and non-economic damages against Empire. Because the bankruptcy court limited Szuhay's means of collecting a judgment against Empire solely to Empire's insurance policies, Szuhay sought to collect payment from Plaintiff-Appellee LM Insurance under the Insurance Policy. LM Insurance refused to pay on the ground that the Insurance Policy did not cover Szuhay's claims for bodily injury.

LM Insurance then initiated the litigation underlying this appeal, filing a complaint in the United States District Court for the Northern District of Ohio requesting a declaratory judgment that LM Insurance was not responsible for paying the default judgment entered by the Court of Common Pleas against Empire. Szuhay filed an answer and a counterclaim for a declaratory judgment that he may recover from LM Insurance, and asserting bad faith. LM Insurance filed a motion for judgment on the pleadings, which Szuhay opposed. The district court granted the motion for judgment on the pleadings, entered a declaratory judgment for LM Insurance that it is not responsible for payment of the judgment Szuhay obtained against Empire, and dismissed Szuhay's counterclaims with prejudice. We affirm.

### III.

We review the district court's grant of judgment on the pleadings under Fed. R. Civ. P. 12(c), applying the same de novo standard of review applicable to orders of dismissal under Rule 12(b)(6). *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 240 (6th Cir. 2011). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly

entitled to judgment." *Id.* (citation omitted); *see also Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1107-08 (6th Cir. 2012). A complaint need not contain "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But it must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).

The parties agree that Ohio law governs the matter in dispute. Under Ohio law, "[a]n insurance policy is a contract." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). "When confronted with an issue of contract interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Id*. Courts should "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Id*. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id*. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Id*.

Szuhay seeks payment under the Insurance Policy of a judgment against Empire for an injury that "ar[ose] out of and in the course of" his employment as a "leased employee/leased worker" with Empire. That kind of injury is specifically excluded from coverage under the Insurance Policy. This Insurance Policy is not an employers' liability policy or a worker's compensation policy; rather, it is a commercial general-liability policy, and "[u]nlike worker's compensation insurance or employers' liability insurance, which exist to provide employers with coverage for injuries that occur to employees during the scope of employment, the sole purpose of commercial general liability insurance is to provide coverage for injuries that occur to the public-at-large." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 763 (6th Cir. 2014) (quoting *Amerisure Ins. Co. v. Orange & Blue Const., Inc.*, 545 F. App'x 851, 855 (11th Cir. 2013). The

judgment, therefore, is not for a "sum[] that [Empire is] legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." As we have already noted, the Lease Agreement obligated Empire to maintain liability-insurance coverage for the acts of leased employees *to the same extent* as it maintained liability-insurance coverage for the acts of its direct employees. Empire did just that. The Insurance Policy is a commercial general-liability policy that covers the acts of employees causing injury to the public, and specifically excludes the kind of bodily injury at issue here if suffered by a direct employee of Empire.

Szuhay's argument that Integrity Staffing is an "additional insured" under the Insurance Policy makes no difference to the resolution of this case.[4] Szuhay has at no point asserted any claims against Integrity Staffing or obtained a judgment of liability against it.[5] The only justiciable controversy before this panel is whether the Insurance Policy covers the judgment against Empire. It plainly does not.

## IV.

The district court did not err by granting declaratory judgment for LM Insurance that it has no obligation under the Insurance Policy to satisfy a default judgment secured against insured non-party Empire. We AFFIRM.

---

[4] Before the district court Szuhay also asserted that the Leasing Agreement, specifically its indemnification clause, created an "insured contract" that obligated LM Insurance to pay for his bodily injury. Szuhay has waived this line of argument on appeal.

[5] In any event, the Insurance Policy specifically excludes the injury for which the judgment was awarded.